**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |
|---|---|
| **INVENSAS CORPORATION,**<br><br>             **Plaintiff,**<br><br>     **vs.**<br><br>**SAMSUNG ELECTRONICS CO., LTD.<br>and SAMSUNG ELECTRONICS<br>AMERICA, INC.,**<br><br>             **Defendants.** | Civil Action No. 2:17-cv-670 [RWS/RSP]<br><br>**FILED UNDER SEAL**<br><br>**CONTAINS INFORMATION<br>DESIGNATED "RESTRICTED -<br>ATTORNEYS' EYES ONLY"**<br><br>**JURY TRIAL DEMANDED** |

**<u>DEFENDANTS' MOTION TO SEVER AND STAY PROCEEDINGS
FOR THE '231 AND '946 PATENTS</u>**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................................ 2

    A.    Invensas's Recent Actions Against Samsung And Allegations In This Action .................................................................................................................. 2

    B.    The Samsung Defendants In Both Actions ............................................................ 5

    C.    Invensas's Past Litigations Involving The Asserted Patents ................................. 6

III.    LEGAL STANDARDS ........................................................................................ 7

IV.    JUDICIAL ECONOMY FAVORS SEVERANCE AND STAY ......................................... 8

    A.    Severing And Staying Proceedings For The '231 And '946 Patents Is Necessary To Promote Judicial Economy And To Avoid Inconsistent Results ................................................................................................................... 8

    B.    A Stay Of Proceedings For The '231 And '946 Patents Will Not Prejudice Invensas While Conserving This Court's Judicial Resources ............................. 14

V.    CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aventis Pharma S.A. v. Sandoz Inc.*,
No. 06-3671 (MLC), 2007 WL 1101228 (D.N.J. Apr. 10, 2007)............................................. 9

*Card Activation Techs. v. Pier 1 Imports, Inc.*,
No. 09-c-2021, 2009 WL 2956926 (N.D. Ill. Sept. 14, 2009)................................................. 14

*Colo. River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976)................................................................................................................. 7

*Genentech, Inc. v. Eli Lilly & Co.*,
998 F.2d 931 (Fed. Cir. 1993)................................................................................................ 13

*In re Dell Inc.*,
600 F. App'x 728 (Fed. Cir. 2015) .................................................................................... 8, 13

*In re Google Inc.*,
588 F. App'x 988 (Fed. Cir. 2014) ......................................................................................... 7

*In re Nintendo Co.*,
544 F. App'x 934 (Fed. Cir. 2013) ....................................................................................... 10

*In re Telebrands Corp.*,
824 F.3d 982 (Fed. Cir. 2016)................................................................................................. 8

*Intellectual Ventures II LLC v. Kemper Corp.*,
No. 6:16-cv-81-JRG (E.D. Tex. Oct. 5, 2016)................................................................ 11, 13

*Invitrogen Corp. v. Gen. Elec. Co.*,
No. 6:08–CV–112, 2009 WL 331891 (E.D. Tex. Feb. 9, 2009)............................................. 9

*Katz v. Lear Siegler, Inc.*,
909 F.2d 1459 (Fed. Cir. 1990)............................................................................................. 12

*Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*,
342 U.S. 180 (1952)................................................................................................................. 7

*Merial Ltd. v. Cipla Ltd.*,
681 F.3d 1283 (Fed. Cir. 2012)............................................................................................... 8

*Microchip Tech., Inc. v. United Module Corp.*,
Nos. CV-10-04241-LHK, 2011 WL 2669627 (N.D. Cal. July 7, 2011) ............................... 14

*Novartis AG v. HEC Pharm Co.*,
No. CIV.A. 15-1647 CCC, 2015 WL 5440821 (D.N.J. Sept. 14, 2015) ................................ 9

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Pfizer Inc. v. Apotex, Inc.*,
  No. CIV.A. 08-CV-00948LD, 2009 WL 2843288 (D. Del. Aug. 13, 2009)........................... 9

*RPost Holdings, Inc. v. Yesware, Inc.*,
  No. 2:13-cv-953-JRG, 2014 WL 12712410 (E.D. Tex. Sept. 4, 2014) ................................ 13

*Save Power Ltd. v. Syntek Fin. Corp.*,
  121 F.3d 947 (5th Cir. 1997) ............................................................................................... 8

*SIPCO, LLC v. Emerson Elec. Co.*,
  No. 6:15-cv-907, 2016 WL 7743496 (E.D. Tex. July 1, 2016) ........................................ 9, 10

*Spread Spectrum Screenings LLC v. Eastman Kodak Co.*,
  657 F.3d 1349 (Fed. Cir. 2011)............................................................................................ 8

*TC Heartland LLC v. Kraft Foods Grp. Brands, LLC*,
  137 S. Ct. 1514 (2017).......................................................................................................... 5

*UltimatePointer, L.L.C. v. Nintendo Co.*,
  Nos. 6:11-CV-496-LED, 2014 WL 12515338 (E.D. Tex. June 17, 2014)............................ 12

## I.    INTRODUCTION

All proceedings for two of the five patents asserted in this action — U.S. 6,232,231 ("'231 Patent") and 6,849,946 ("'946 Patent") — should be severed and stayed because these patents are already asserted against Defendant Samsung Electronics Co., Ltd. ("SEC") in a parallel action pending in the District of Delaware.  Before Plaintiff Invensas Corp. ("Invensas") filed this action, it filed the parallel Delaware action where its allegations for the '231 and '946 Patents are identical. The only difference between the actions is that, in addition to naming SEC as a defendant, each action names a different U.S. subsidiary of SEC as a co-defendant.  In this action, Invensas has sued SEC, which develops, designs, and manufactures the semiconductor chips that Invensas accuses of infringing, and Samsung Electronics America, Inc. ("SEA"), which markets and sells end consumer devices (such as smartphones and tablets) in the United States that use the accused semiconductor chips.  In Delaware, Invensas also sued SEC, but not SEA.  Instead, Invensas named as a co-defendant another U.S. subsidiary, Samsung Austin Semiconductor LLC ██████████████

██████████████████████████████████████████

It would be wasteful and lead to inconsistent results to allow Invensas's identical allegations in this action and the Delaware action to be tried in parallel for the overlapping '231 and '946 Patents.  Invensas's claims for the two patents should instead be tried in Delaware because it is the first-filed action and the claims can be resolved more efficiently in one single action as opposed to in both Delaware and this District.  Moreover, the two Samsung defendants in Delaware, SEC and SAS, ██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████ By contrast, SEA, a defendant in this action, markets and sells consumer devices like Galaxy smartphones that use chips produced by ████████████ thus cannot provide any evidence regarding the design, development, and manufacture of the accused semiconductor chips used in the end consumer devices.  Moreover, if the Court grants severance and stay, SEA will agree to be bound by the outcome of the Delaware action, obviating the need for a separate trial against SEA.  Invensas cannot be heard to complain about trying its claims in Delaware, as it chose that forum for its parallel and first-filed action.  Indeed, Invensas has litigated there multiple times before and is incorporated in Delaware, while it has no ties to this District.

Considerations of judicial efficiency therefore compel severing and staying proceedings as to the '231 and '946 Patents to allow Invensas's claims for those patents to be tried in Delaware. Alternatively, rather than severance and stay, the Court may instead dismiss Invensas's claims as to the '231 and '946 Patents if the Court believes that dismissal better achieves the goals of judicial efficiency and avoiding duplicative litigation.

In addition to this motion, Samsung has concurrently filed a motion to transfer to Delaware the entirety of Invensas's action.  Samsung prefers that the Court grant Samsung's separate transfer motion so that Invensas's claims for all five Asserted Patents can be tried in a single forum.  Thus, this motion's request to sever and stay proceedings for only the '231 and '946 Patents is conditional and alternative in the event that the Court denies Samsung's motion to transfer.

## II.    FACTUAL BACKGROUND

### A.    Invensas's Recent Actions Against Samsung And Allegations In This Action

On September 28, 2017, Invensas and its affiliates filed seven domestic actions (including this action) against various Samsung defendants in federal courts in this District, Delaware, and New Jersey, and in the U.S. International Trade Commission.  Below, captions for these seven actions are listed and the two Invensas-filed actions are described in greater detail.  Samsung is

moving to transfer all three actions filed in this District to Delaware.  As noted in the Introduction,

Samsung prefers that this Court grant Samsung's concurrent motion to transfer the entirety of this

action to Delaware.  But if the Court denies transfer, Samsung requests that the Court grant this

motion's request to sever and stay proceedings in this action for only the '231 and '946 Patents.

1.  *Invensas Corp. v. Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*, 17-cv-00670 (E.D. Tex.)

2.  *Invensas Corp. v. Samsung Electronics Co., Ltd. and Samsung Austin Semiconductor, LLC*, 17-cv-01363 (D. Del.)

3.  *Invensas Bonding Technologies v. Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*, 17-cv-07609 (D.N.J.)

4.  *Tessera Advanced Technologies, Inc. v. Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*, 337-TA-1080 (I.T.C.)

5.  *Tessera Advanced Technologies, Inc. v. Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*, 17-cv-07621 (D.N.J.)

6.  *Tessera Advanced Technologies, Inc. v. Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*, 17-cv-00671 (E.D. Tex.)

7.  *FotoNation Ltd. and DigitalOptics Corp. MEMS v. Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*, 17-cv-00669 (E.D. Tex.)

In its complaint in this action, Invensas identifies no ties between itself and this District.

Rather, Invensas is a Delaware corporation headquartered in San Jose, California.  D.I. 1 at ¶ 2.

The complaint alleges that SEC and SEA infringe five patents:  the '231 and '946 Patents noted

above, as well as U.S. 6,566,167 ("'167 Patent"), 6,825,554 ("'554 Patent"), and 6,054,336 ("'336

Patent") (collectively, "Asserted Patents").  *Id.* at ¶ 1.  The '946 Patent is a continuation of the

'231 Patent, and the '554 Patent is a division of the '167 Patent.  Exs. 1-2, 4-5.[1]

All five Asserted Patents are directed to designs and manufacturing processes for

semiconductor chips and packages.  Exs. 1-5.  Invensas alleges that Samsung infringes the

---

[1]    Unless otherwise noted, all citations to "Ex." are to exhibits to the declaration of Brian Berliner.

Asserted Patents because its end consumer products (such as smartphones and tablets) include semiconductor chips (such as processors and memory) that practice the Asserted Patents based on their designs or the way they are manufactured.  D.I. 1 at ¶¶ 19, 32, 44, 58, 72.  For example, the '231 and '946 Patents are directed to a semiconductor manufacturing process called "planarization," which makes planar or flat the surface of layers within a semiconductor chip.  *E.g.*, Ex. 1 ('231 Patent) at Abstract, 1:8-14, 3:64-4:3.  For these two patents, Invensas alleges that Samsung infringes because its end consumer devices contain "Exynos processors and other semiconductor chips made in a substantially similar way . . . using a process practicing all of the limitations of one or more claims."  D.I. 1 at ¶ 19; *see also id.* at ¶ 32.

Samsung filed its answer on December 19, 2017.  D.I. 24.  The scheduling conference only recently occurred on January 11, 2017 and set the *Markman* hearing for August 9, 2018, and trial for February 19, 2019.  D.I. 38.

In the Delaware action that Invensas filed against Samsung on the same day as this action, Invensas is asserting only the '231 and '946 Patents.  *Invensas Corp. v. Samsung Elecs. Co.*, No. 17-cv-01363 ("Delaware Action").  Invensas filed the Delaware Action at 3:15 p.m. CT, one minute before it filed this action.  Exs. 6-7.  The Delaware Action also names SEC as a defendant, but it does not name SEA.  Ex. 8.  Instead, Invensas names SAS as a defendant.  *Id.*

Invensas's Delaware complaint, however, alleges the same infringement theories for SAS as it does for SEA in this action.  Both complaints assert that "Defendants SEC and [SAS/SEA] are related entities that work in concert to design, manufacture, import, distribute, and/or sell the infringing devices."  *Compare* Ex. 8 at ¶ 5, *with* D.I. 1 at ¶ 5.  And for the '231 and '946 Patents, both complaints' specific infringement allegations are nearly verbatim and assert that Samsung infringes because its end consumer devices include "Exynos processors" and other "substantially similar" semiconductor chips that infringe based on their design or how they are manufactured.

*Compare* Ex. 8 at ¶¶ 14-39, *with* D.I. 1 at ¶¶ 18-42.

Invensas may have filed two separate actions in Delaware and this District in part to comply with its understanding of the venue requirement set forth in *TC Heartland LLC v. Kraft Foods Group Brands, LLC*, 137 S. Ct. 1514 (2017).  Venue would be improper over SAS in this District because it is a Delaware limited liability company with no regular and established place of business in this District.  Meanwhile, venue would be improper over SEA in Delaware because it is a New York corporation with no regular and established place of business in Delaware.  But venue over SEC, the ultimate parent of both SEA and SAS, would be proper in both Delaware and this District, and it is indeed named in both complaints.

Like this action, the Delaware Action is in its infancy as Samsung only filed its answer on December 19, 2017.  Ex. 9.  The scheduling conference in that action just occurred on January 22, 2018, and trial is scheduled for November 2019.  Ex. 10.

### B.    The Samsung Defendants In Both Actions

Defendant SEC is a Korean company headquartered in Suwon, Korea.  Lee Decl. at ¶ 3. SEC and its employees in Korea are responsible for developing, designing, testing, manufacturing, and assembling the semiconductor chips and packages accused in Invensas's complaint as well as end consumer devices that use these semiconductor chips.  *Id*. at ¶ ███████████████████ ███████████████████████████████████████████████████████████████  To the extent that any documentation relating to the accused semiconductor chips exists and is in SEC's possession, it is located in SEC's facilities in Korea.  *Id*. at ¶¶ 5, 7.

SAS, a defendant in only the Delaware Action, is a wholly owned subsidiary of SEC through other intermediate Samsung parent entities, including SEA.  Ex. 15; Huandra Decl. at ¶ 4. It is a Delaware limited liability company headquartered in Austin, Texas.  Huandra Decl. at ¶ 3. SAS operates state-of-the-art semiconductor manufacturing facilities in Austin.  *Id*. at ¶ 5.  Since

1997, Samsung has invested over $16 billion in SAS's Austin facilities, and in 2015, SAS contributed $3.6 billion to the central Texas economy while supporting 10,755 jobs in the area. Ex. 11.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████

Defendant SEA, a wholly owned subsidiary of SEC, is a New York corporation headquartered in Ridgefield Park, New Jersey.  Diaz Decl. at ¶¶ 3-4.  SEA has offices in Richardson, Texas.  *Id*. at ¶ 3.  But SEA has no involvement in the design, development, testing, manufacture, or assembly of the accused semiconductor chips.  *Id*. at ¶ 5.  Rather, SEA imports into the United States end consumer Samsung products, and SEA is then responsible for commercialization, sales, marketing, distribution, service, and repair for those products in the United States.  *Id*.  SEA maintains documents relating to its activities.  *Id*. at ¶ 6.  But SEA does not possess documents relating to the design, development, testing, manufacture, or assembly of the semiconductor chips that Invensas accuses, nor does it have any employees who could serve as knowledgeable witnesses on those subjects.  *Id*. at ¶ 7.

**C.** **Invensas's Past Litigations Involving The Asserted Patents**

Neither this action nor the Delaware Action is the first time that Invensas has sued for infringement of the Asserted Patents.  Rather, as summarized in the table below, Invensas has asserted four of the Asserted Patents in three prior district court actions, all filed in Delaware.

| Invensas's Prior Actions in Delaware | Patents |
|---|---|
| *Invensas Corp. v. Broadcom Corp.*, 16-cv-00379 (May 2016-Dec. 2017) | '946 |
| *Invensas Corp. v. Avago Techs., Ltd.*, 16-cv-01033 (Nov. 2016-Dec. 2017) | '946 |
| *Invensas Corp. v. Renesas Elecs. Corp.*, 11-cv-00448 (May 2011-Mar. 14) | '167, '554 |

In 2016, Invensas filed two actions in Delaware based on the '946 Patent, the first against Broadcom Corp. and the second against Avago Technologies, Ltd. and other defendants.  Exs. 12-13.  Both actions were stayed pending resolution of a parallel ITC investigation (ITC Investigation No. 337-TA-1010) and then settled and dismissed on December 18, 2017.  *Id.*

On May 23, 2011, Invensas asserted the '167 and '554 Patents against defendant Renesas Electronics Corp.  Ex. 14.  That action had proceeded through *Markman*, fact discovery, expert reports, and partway through expert depositions when the parties filed a stipulated dismissal on March 20, 2014.  *Id.*

## III.   LEGAL STANDARDS

"The Supreme Court has repeatedly observed that under the doctrine of comity, when cases involving substantially overlapping issues are pending before two federal district courts, there is a strong preference to avoid duplicative litigation," a practice that "reflects an elementary principle of 'wise judicial administration'" and avoiding "inconsistent rulings."  *In re Google Inc.*, 588 F. App'x 988, 990 (Fed. Cir. 2014) (citing *Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976), and *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 182 (1952)).

To conserve judicial resources and avoid inconsistent rulings, both the Federal Circuit and the Fifth Circuit have followed the "first-to-file rule," which "stands for the common sense proposition that, when two cases are the same or very similar, efficiency concerns dictate that only one court decide both cases" and where "the overlap is complete or nearly complete, the usual rule

is for the court of first jurisdiction to resolve the issues." *In re Telebrands Corp.*, 824 F.3d 982, 984 (Fed. Cir. 2016); *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). "Under the first-to-file rule, a district court may choose to stay, transfer, or dismiss a duplicative later-filed action." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012).

To conserve judicial resources and avoid inconsistent rulings, courts have also applied the customer suit exception, under which a litigation involving "the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer," even if the manufacturer suit was later filed. *In re Dell Inc.*, 600 F. App'x 728, 730 (Fed. Cir. 2015). The "guiding principles in the customer suit exception cases are efficiency and judicial economy." *Spread Spectrum Screenings LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011). "[C]ourts apply the customer suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum." *Id*.

## IV.    JUDICIAL ECONOMY FAVORS SEVERANCE AND STAY

### A.    Severing And Staying Proceedings For The '231 And '946 Patents Is Necessary To Promote Judicial Economy And To Avoid Inconsistent Results

Severing and staying proceedings as to the '231 and '946 Patents is necessary to avoid inconsistent results and duplicating efforts with the Delaware Action. Here, Invensas filed the Delaware Action earlier on the same day as this action, and it is pursuing identical claims in that action against the same entity, SEC, for those two patents. Both actions will thus present identical claim construction, validity, and infringement issues for the Delaware court to decide, which raises the risk of inconsistent determinations. Moreover, Delaware local rules include patent procedures that are similar to those in this District, including early disclosure of infringement and invalidity contentions, and early production of documents relating to the accused products. Ex. 16 at 4-5. Thus, both actions will present duplicative litigation burdens and discovery demands.

Facing similar overlaps in patents, parties, and issues with other parallel actions, courts

have consistently taken measures to avoid duplicative litigation and inconsistent results.   In *Novartis AG v. HEC Pharm Co.*, where plaintiff sued for patent infringement in Delaware and then sued the same defendant for infringing the same patent a month later in New Jersey, the New Jersey court granted a stay because having two courts address the same issues is a "textbook example of waste of judicial resources" and would "risk[] inconsistent determination." No. CIV.A. 15-1647 CCC, 2015 WL 5440821, at *4 (D.N.J. Sept. 14, 2015).  In *Aventis Pharma S.A. v. Sandoz Inc.*, where the plaintiff filed actions on the same patent against the same defendant in New Jersey and California on the same day, the New Jersey court transferred the action to California on the "basis of judicial economy." No. 06-3671 (MLC), 2007 WL 1101228, at *3-4 (D.N.J. Apr. 10, 2007).  Similarly, in *Pfizer Inc. v. Apotex, Inc.*, where plaintiff filed identical actions on the same day against the same defendant in Delaware and Illinois, the Delaware court granted transfer because it would be "inappropriate to allow a plaintiff to file identical actions in different courts and then pick the court in which it wishes to proceed."  No. CIV.A. 08-CV-00948LD, 2009 WL 2843288, at *3 (D. Del. Aug. 13, 2009).

This District has likewise recognized and applied the principle that "[w]hen a plaintiff brings similar suits in two different districts, the court must consider . . . judicial economy and decrease the risk of inconsistent adjudication."  *Invitrogen Corp. v. Gen. Elec. Co.*, No. 6:08–CV–112, 2009 WL 331891, at *4 (E.D. Tex. Feb. 9, 2009).  For example, in *SIPCO, LLC v. Emerson Electric Co.*, where plaintiff filed actions in this District and Georgia against the same defendant for related patents, this District granted transfer because the "Texas action and the Georgia action substantially overlap" as they "involve the same parties, patents from the same patent families with similar claim elements and drawings, the same type of technology, and the same accused products."  No. 6:15-cv-907, 2016 WL 7743496, at *4 (E.D. Tex. July 1, 2016).  In reaching its decision, this District rejected the plaintiff's claims that the "features of the accused products differ

between the Texas action and the Georgia action," reasoning that although "[t]here may be additional features present in the accused products in one action that are not present in the other action, . . . that does not preclude a finding of substantial overlap when the general technology is the same." *Id.*

The judicial economy interests motivating the customer suit exception also apply to favor the Delaware action.  The exception gives the manufacturer suit precedence because customer defendants "will have very little to offer in the way of evidence regarding the substantive aspects of the infringement case.  They can add little to nothing regarding how the technology underlying the accused products works." *In re Nintendo Co.*, 544 F. App'x 934, 941 (Fed. Cir. 2013).  The exception thus "endorses staying a case against a customer or retailer in light of the notion that the manufacturer is the 'true defendant,'" whose action can proceed more efficiently than an action against a downstream entity who merely purchases or resells the manufacturer's products.  *Id.* Although in a typical customer suit exception case, the customer and manufacturer are separate entities in separate actions, whereas here SEC is a defendant in both actions, Invensas's actions are nonetheless similar to a typical customer suit ████████████████████████████████████ ██████████████████████████████████

██████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████ SEA then receives in the United States these consumer products

from SEC and performs commercialization, sales, marketing, distribution, service, and repair for

these products.  Diaz Decl. at ¶ 5.  SEA has no involvement in the design, development, testing,

manufacture, or assembly of the accused semiconductor chips and thus has no documents or

employees who could serve as knowledgeable witnesses on these issues.  *Id*. at ¶¶ 5-7.

Given the respective roles of SEC, SAS, and SEA, Invensas's allegations for the '231 and

'946 Patents would be resolved more efficiently in Delaware than in this District, ████████████

████████████████████  Like the retailer defendants in *In re Nintendo*, SEA could not provide

any evidence or discovery regarding substantive aspects of the infringement case, such as the

technology underlying the accused semiconductor chips and manufacturing processes for those

products.  These facts are also comparable to *Intellectual Ventures II LLC v. Kemper Corp.*, where

a plaintiff first sued customer defendants in this District, alleging that those defendants infringed

two patents based on their use of certain products.  No. 6:16-cv-81-JRG, D.I. 55 at 1-2 (E.D. Tex.

Oct. 5, 2016).  One of the two patents was also at issue in a parallel litigation in Massachusetts that

the plaintiff had later filed against the manufacturer of the same products.  *Id*.  In light of these

facts, Judge Gilstrap applied the customer suit exception to sever and stay proceedings with respect

to only the overlapping patent pending resolution of the later-filed Massachusetts manufacturer

action.  *Id*. at 2-3.  Judge Gilstrap reasoned that "[a]llowing the claims concerning the

[overlapping] patent to proceed both in this Court and in a parallel litigation would inappropriately

waste judicial resources" and "Plaintiff's infringement contentions against Defendants rely almost

exclusively on the underlying functionalities of the accused products, an issue that will necessarily

be explored in detail in the [manufacturer] case."  *Id*. at 2. █████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████

Moreover, Invensas's decision to pursue parallel actions against a common entity, SEC, based on the same accused products and activities raises the risk of double recovery. *See, e.g.*, *UltimatePointer, L.L.C. v. Nintendo Co.*, Nos. 6:11-CV-496-LED, 2014 WL 12515338, at *4 (E.D. Tex. June 17, 2014) (applying the customer suit exception to grant transfer, because "[plaintiff] cannot also collect damages from the Retailers for [manufacturer] products, because it cannot receive a double recovery for the same sales"). The risk of double recovery is heightened in this case because SEC is a named defendant in both actions and is a parent of SEA (a defendant in this action) and SAS (a defendant in Delaware). Thus, a stay is necessary to ensure that Invensas can only obtain recovery once from Samsung.

And because Invensas's infringement allegations across its two complaints are identical, the disposition of the Delaware Action with SAS would also dispose of this action with SEA. *See Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1463 (Fed. Cir. 1990) (in deciding whether to apply the customer suit exception, "a primary question is whether the issues and parties are such that the disposition of one case would be dispositive of the other"). Indeed, Invensas's complaint alleges that SEA infringes only based on its functions of "commercializing, marketing, selling, distributing, and servicing certain Samsung-branded devices, including but not limited to phones and tablets." D.I. 1 at ¶ 9. ████████████████████████████████

███████████████████████████████████████████████

████████████████████████████ To further ensure that the Delaware Action fully disposes of Invensas's claims, SEA will agree to be bound by the result of the Delaware action if the Court grants this motion. SEA's agreement avoids the need for a trial or further proceedings in this

District as to the '231 and '946 Patents.  *See Kemper*, No. 6:16-cv-81-JRG, D.I. 55 at 2 (Judge

Gilstrap applying the customer suit exception to stay proceedings for one of two asserted patents

because the customer defendant agreed to be bound by the result of a parallel manufacturer action

for the overlapping patent).

Finally, the customer suit exception normally applies as an exception to the first-to-file rule

by staying a first-filed action against a customer in favor of a later-filed action against a

manufacturer.  *In re Dell*, 600 F. App'x at 730.  Here, by contrast, the first-to-file rule actually

further supports the same outcome as the customer suit exception — *i.e.*, resolving Invensas's

claims in Delaware — because Invensas filed the Delaware Action against SEC and SAS before

this action with SEC and SEA.  Exs. 6-7.  Although Invensas filed the Delaware Action only one

minute earlier, in *RPost Holdings, Inc. v. Yesware, Inc.*, Judge Gilstrap applied the first-to-file rule

to transfer a plaintiff's action to Massachusetts where the defendant had filed a declaratory

judgment action against the plaintiff on the same patents just hours earlier on the same day.  No.

2:13-cv-953-JRG, 2014 WL 12712410, at *1-2 (E.D. Tex. Sept. 4, 2014).  In his order, Judge

Gilstrap explained that the "Federal Circuit has treated a separation of only a single day as

sufficient to trigger the first to file rule" and thus the "rule means precisely what it says:  'the first

filed'; not the first filed by a minute, an hour, a day or a week—but simply 'the first filed.'  Though

filed within the same calendar day as the action before this Court, [defendant's declaratory

judgment] action is clearly the first filed."  *Id*. at *2 (citing *Genentech, Inc. v. Eli Lilly & Co.*, 998

F.2d 931, 938 (Fed. Cir. 1993)).[2]

---

[2]   The other requirements of the first-to-file rule — similarity of issues and parties — are also
met.  The issues are identical because as discussed, Invensas's allegations are nearly verbatim
between its two complaints.  The parties are similar because Invensas and SEC are parties to
both actions.  Although SEA and SAS is each named in only one of the two actions, SAS is a
subsidiary of SEA, which in turn is a subsidiary of SEC.  Huandra Decl. at ¶ 4.  Courts have
held that parent entities and their wholly owned subsidiaries are "similar" parties for the

████████████████████████████████████████

████████████████████████████████████

**B.      A Stay Of Proceedings For The '231 And '946 Patents Will Not Prejudice Invensas While Conserving This Court's Judicial Resources**

Severing and staying proceedings in this action as to the '231 and '946 Patents will not prejudice Invensas in any respect.  Both this action and the Delaware Action are in their infancy.  The scheduling conference in this action only took place on January 11 and set the *Markman* hearing for August 2018 and trial for February 2019.  D.I. 38.  The scheduling conference in the Delaware Action just occurred on January 22, 2018, and the case schedule sets trial for November 2019.  Ex. 10.  In neither action have the parties served or provided any discovery.  Further, if the Court grants this motion, SEA will agree to be bound by the outcome of the Delaware action.

Invensas also cannot credibly claim that proceeding in Delaware would be prejudicial.  Invensas is incorporated in Delaware and before filing the parallel Delaware Action, Invensas had filed three prior actions in Delaware based on the Asserted Patents, including two actions based on the '946 Patent.  Delaware is thus Invensas's home court and one with which it is familiar.  Meanwhile, Invensas has no connections or litigation history in this District.  Staying Invensas's infringement claims for the '231 and '946 Patents also simplifies the litigation for Invensas, as Invensas will be able to marshal all its resources into one lawsuit as opposed to two.  *See, e.g.*, *Card Activation Techs. v. Pier 1 Imports, Inc.*, No. 09-c-2021, 2009 WL 2956926, at *4 (N.D. Ill. Sept. 14, 2009) (noting that "staying this case will allow [the patentee] the opportunity to devote to the [second-filed] case resources that otherwise would have gone into simultaneously litigating the instant case").  Thus, far from prejudicing Invensas's claims, severance and stay would only

---

purposes of the first-to-file rule.  *E.g.*, *Microchip Tech., Inc. v. United Module Corp.*, Nos. CV-10-04241-LHK, 2011 WL 2669627, at *3 (N.D. Cal. July 7, 2011).

improve its ability to protect its interests.

Severance and stay would also conserve this Court's judicial resources and simplify issues in this action.  The Court will no longer have to spend time reviewing the '231 and '946 Patents or conduct *Markman* proceedings for those two patents.  Nor will the Court need to decide discovery disputes and dispositive motions pertaining to those two patents.  A trial in this District as to the '231 and '946 Patents will also become unnecessary.  Instead, a trial in this action would be simplified because the jury and this Court would only need to decide issues for the three remaining patents, rather than for the five patents currently asserted.

## V.    CONCLUSION

Allowing both this action and the parallel Delaware Action to proceed in parallel for the overlapping '231 and '946 Patents would be wasteful.  ████████████████████ ████████████ SEC and SAS as defendants and was first-filed while this action omits SAS and instead includes customer SEA as a defendant, judicial economy compels severing and staying proceedings in this action for the '231 and '946 Patents pending resolution of the Delaware Action. Alternatively, rather than severance and stay, the Court may dismiss Invensas's claims as to the '231 and '946 Patents if the Court believes that dismissal would better achieve the goals of judicial efficiency and avoiding inconsistent results.

Dated: February 1, 2018                    Respectfully submitted,

                                           By: */s/ Ryan K. Yagura* _____

                                           Ryan K. Yagura (Tex. Bar No. 24075933)
                                           ryagura@omm.com
                                           Brian M. Berliner (Cal. Bar No156732)
                                           bberliner@omm.com
                                           **O'MELVENY & MYERS LLP**
                                           400 S. Hope Street
                                           Los Angeles, CA 90071
                                           Telephone: 213-430-6000
                                           Facsimile: 213-430-6407

                                           Darin W. Snyder (Cal. Bar No. 136003)
                                           dsnyder@omm.com
                                           Mark Liang (Cal. Bar No. 278487)
                                           mliang@omm.com
                                           **O'MELVENY & MYERS LLP**
                                           Two Embarcadero Center, 28th Floor
                                           San Francisco, CA 94111
                                           Telephone: 415-984-8700
                                           Facsimile: 415-984-8701

                                           D. Sean Trainor (D.C. Bar No. 463514)
                                           dstrainor@omm.com
                                           **O'MELVENY & MYERS LLP**
                                           1625 Eye Street NW
                                           Washington, DC 20037
                                           Telephone: 202-383-5300
                                           Facsimile: 202-383-5414

                                           Melissa R. Smith
                                           melissa@gillamsmithlaw.com
                                           **GILLAM & SMITH, LLP**
                                           303 South Washington Avenue
                                           Marshall, TX 75670
                                           Telephone: 903-934-8450
                                           Facsimile: 903-934-9257

                                           ***Attorneys for Defendants***
                                           ***Samsung Electronics Company, Ltd., and***
                                           ***Samsung Electronics America, Inc.***

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Plaintiff's counsel of record were served with a true and correct copy of the foregoing document by electronic mail on this the 1st day of February, 2018.

*/s/ Melissa R. Smith*
Melissa R. Smith

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Melissa R. Smith*
Melissa R. Smith

## CERTIFICATE OF CONFERENCE

On January 30, 2018, pursuant to Local Rule CV-7(h), counsel for Defendants met and conferred with counsel for Plaintiff, and counsel for Plaintiff indicated on January 31, 2018, that Plaintiff is opposed to the relief sought by this Motion.

*/s/ Melissa R. Smith*
Melissa R. Smith