**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| INVENSAS CORPORATION, | |
| Plaintiff, | Civil Action No. 2:17-cv-670-RWS-RSP |
| v. | **FILED UNDER SEAL** |
| | **JURY TRIAL DEMANDED** |
| SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC., | |
| Defendants. | |

**INVENSAS CORPORATION'S RESPONSE TO DEFENDANTS' MOTION TO SEVER
AND STAY PROCEEDINGS FOR THE '231 AND '946 PATENTS**

RESTRICTED – ATTORNEYS' EYES ONLY

## TABLE OF CONTENTS

Page

I.   FACTUAL BACKGROUND ............................................................................3

     A.   The Texas Actions ............................................................................3

     B.   The Delaware Action ........................................................................4

II.  LEGAL STANDARDS ...............................................................................5

III. SEVERANCE AND STAY IS NOT WARRANTED AND WOULD CAUSE
     DELAY, INEFFICIENCY, AND PREJUDICE TO INVENSAS ......................................7

     A.   First-to-File Does Not Apply Because The Actions Do Not Have
          Substantially Overlapping Defendants Or Accused Products ................................9

          1.   There Is No Complete Or Nearly Complete Overlap Between The
               Two Actions.................................................................................9

          2.   It Is More Convenient To Litigate In This District...................................12

     B.   The Customer-Suit Exception Is Inapplicable Because SEA Is Not A Mere
          Reseller ..........................................................................13

     C.   No Risk Of Double Recovery Due To Different Accused Products ....................15

IV.  CONCLUSION...........................................................................................15

RESTRICTED – ATTORNEYS' EYES ONLY

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Aventis Pharma S.A. v. Sandoz Inc.*,
    No. 06-3671 (MLC), 2007 WL 1101228 (D.N.J. Apr. 10, 2007)............................................11

*Cellular Commc'ns Equip. LLC v. HTC Corp.*,
    Case Nos. 6:13-cv-507, 6:14-cv-251, 2015 WL 11118110 (E.D. Tex. Mar. 27,
    2015) ......................................................................................................................5, 6, 7, 8

*DSS Technology Management, Inc. v. Intel Corp.*,
    No. 6:15-cv-130, 2015 WL 12806514 (E.D. Tex. Nov. 12, 2015).............................13, 14, 15

*Genentech, Inc. v. Eli Lilly & Co.*,
    998 F.2d 931 (Fed. Cir. 1993).............................................................................6, 9, 12

*Innovative Automation, LLC v. Audio Video & Video Labs, Inc.*,
    No. 6:11-CV-234 LED-JDL, 2012 WL 10816848 (E.D. Tex. May 30, 2012).........................7

*Kahn v. Gen. Motors Corp.*,
    889 F.2d 1078 (Fed. Cir. 1989)..................................................................................6, 12, 13

*Katz v. Lear Siegler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990)................................................................................................6

*Maurice Mitchell Innovations, L.P. v. Intel Corp.*,
    No. 2:04-CV-450, 2006 WL 1751779 (E.D. Tex. June 21, 2006)............................................11

*Microlinc, LLC v. Intel Corp.*,
    No. 2:07-CV-488 TJW, 2010 WL 3766655 (E.D. Tex. Sept. 20, 2010) ...................................6

*Mirror Worlds Techs., LLC v. Dell Inc.*,
    No. 6:13-CV-941, 2014 WL 11268268 (E.D. Tex. Sept. 29, 2014).......................................14

*In re Nintendo of Am.*,
    756 F.3d 1363 (Fed. Cir. 2014)................................................................................................6

*Novartis AG v. HEC Pharm Co.*,
    No. 15-1657 (CCC), 2015 WL 5440821 (D.N.J. Sept. 14, 2015) ...........................................11

*Pfizer Inc. v. Apotex, Inc.*,
    No. 08-cv-00948-LDD, 2009 WL 2843288 (D. Del. Aug. 13, 2009) .....................................11

*SAES Getters, S.p.A. v. Aeronex, Inc.*,
    219 F. Supp. 2d 1081 (S.D. Cal. 2002)...................................................................................13

RESTRICTED – ATTORNEYS' EYES ONLY

*SIPCO, LLC v. Emerson Electric Co.*,
No. 6:15-cv-907, 2016 WL 7743496 (E.D. Tex. July 1, 2016) ...............................................11

*In re Telebrands Corp.*,
824 F.3d 982 (Fed. Cir. 2016) ..............................................................................................6, 9

*Ultravision Techs., LLC v. Lamar Advertising Co.*,
No. 2:16-CV-374-JRG-RSP, 2017 WL 823419 (E.D. Tex. Mar. 2, 2017) .........................8, 9

*West Gulf Mar. Ass'n v. ILA Deep Sea Local 24*,
751 F.2d 721 (5th Cir. 1985) ...................................................................................................6

## RULES

Fed. R. Civ. P. 21 ...........................................................................................................................5

RESTRICTED – ATTORNEYS' EYES ONLY

Samsung Electronics Co., Ltd.'s ("SEC") and Samsung Electronics America, Inc.'s ("SEA") (collectively, "Samsung") motion to sever and stay U.S. Patent Nos. 6,232,231 ("'231 patent") and 6,849,946 ("'946 patent") ignores that this case and the Delaware case are very different.  The most obvious difference is that this case asserts three additional patents not asserted in the Delaware case.  But even the claims specific to the '231 and '946 patents are different because there is no overlap of accused products or infringing acts.  In the present action, Invensas accuses *SEA's U.S. product sales* of infringement.  The Delaware action against SEA and Samsung Austin Semiconductor, LLC ("SAS")—an entirely different entity from SEA—

███████████████████████████████████████████████████████

█████████.  Thus, the two cases include different parties, different patents, different accused products, different acts of infringement, and different damages bases.  There is therefore no reason to sever and stay the '231 and '946 patent claims in favor of the Delaware action.[1]

Samsung ignores all this and rests its arguments on a false premise—that resolution of the Delaware action will resolve the '231 and '946 patent claims here.  But Samsung knows this is not true, as Invensas already served infringement contentions in this case (before Samsung filed its motion) that do not include any infringement allegations against ███████████████, but do include infringement allegations against SEA's U.S. sales of products that incorporate numerous chips that have nothing to do with SAS.  Invensas's allegations against SEA's U.S. sales will not be resolved in the Delaware action.  And to remove any doubt about how different the two cases really are, Invensas filed an amended complaint in this action to reiterate that the

---

[1] The only reason that Invensas asserts the same two patents in two different venues is that SEA and SAS were not subject to venue in the same district under *TC Heartland*.  After filing, Invensas offered to consolidate the cases in Texas, but Samsung refused.  Instead, once the Delaware court set trial nearly a year after the trial in this action, Samsung sought to move this case to Delaware.

RESTRICTED – ATTORNEYS' EYES ONLY

two cases accuse entirely different acts of infringement and products and that Invensas is not seeking a double-recovery for any infringing acts or products between the two actions.[2]

Samsung attempts to ignore the many differences between the cases by improperly asking this Court to apply the first-to-file rule, because Invensas filed its Delaware action one minute earlier, and to apply the customer-suit exception on the premise that ███████████████ SEA's accused products.  But the first-to-file rule applies only when there is nearly complete overlap between the two cases, not when there is no overlap of accused products or infringing acts as here.  Nor does the customer-suit exception apply because SEA is not simply a "reseller" of ██████████ and resolution of the Delaware action will not resolve SEA's liability in this case as to its U.S. sales of infringing products, including those that do not ████████████.

Severing and staying claims in this case until the Delaware case is resolved will cause delay, inefficiency, and prejudice to Invensas.  This case has been underway for months, and the parties should not have to restart proceedings in Delaware.  The Delaware schedule is much slower, with trial scheduled nine months after trial in this action.  And in any event, resolving the Delaware action will not even resolve Invensas's claims against SEA's U.S. infringing sales.  These claims should not be halted for an indefinite period of time, for no good reason.  At bottom, Samsung's motion to sever and stay (like the belated transfer motions it filed only after getting trial dates in this case and the Delaware action)[3] is nothing more than a tactical attempt to delay and obstruct Invensas's ability to seek relief for the infringement of its patents.  The Court should deny Samsung's motion.

_____

[2] (Dkt. 52, First Amended Complaint at  ¶¶ 17-18, 20, 33.)

[3] In addition to seeking to transfer this case to Delaware and in the alternative to sever and stay, Samsung seeks to transfer to Delaware two other Texas cases involving Invensas affiliates.  (*See* 17-cv-669, Dkts. 49, 51; 17-cv-670, Dkts. 33, 36.)  Each of those Texas cases goes to trial months before the Delaware case.  (*See* Ex. 1 at 1; Ex. 2 at 1; Ex. 3 at 11.)

RESTRICTED – ATTORNEYS' EYES ONLY

## I.      FACTUAL BACKGROUND

### A.      The Texas Actions

On September 28, 2017, Invensas filed this action against SEC and SEA alleging infringement of five patents: the '231 patent, the '946 patent, and U.S. Patent Nos. 6,566,167 ("'167 patent"), 6,825,554 ("'554 patent"), and 6,054,336 ("'336 patent") (collectively "patents-in-suit").  (*See, e.g.*, Dkt. 1 at ¶ 1.)  Samsung admits venue is proper in this District because SEA maintains offices here.  (*See* Mot. at 6; Dkt. 24.)  Samsung also admits that "venue would be improper over SEA in Delaware."  (Mot. at 5.)  The Court held a scheduling conference on January 11, 2018 and entered a Docket Control Order (Dkt. 38) setting deadlines for, among other things, the parties' contentions, *Markman* briefing and hearing, and trial.  Trial is scheduled to begin on February 19, 2019, approximately one year from now.

Pursuant to the Docket Control Order, Invensas served its infringement contentions on January 29, 2018, before Samsung filed this motion.  (*See* Dkt. 39.)  While Samsung focuses its motion on the Exynos processor (*see* Mot. at 4), Invensas alleges that Samsung's U.S. sales of products containing numerous semiconductor chips infringe the '231 and '946 patents, as well as the other three patents-in-suit.  (*See* Ex. 4 at 3-6.)  Samsung's invalidity contentions are due April 27, 2018.  (Dkt. 38.)

In this action, Invensas seeks recovery for SEA's and SEC's infringing acts of importing and/or selling in the United States products incorporating accused semiconductor chips.  (*See* Dkt. 1 at ¶¶ 19, 32 (accusing end product devices).)  It is Invensas's understanding that Samsung smartphones sold in the United States do ***not*** use an Exynos processor.  (*See, e.g.*, Ex. 5 at 2, 4.)  Invensas is not seeking recovery in this action for ████████████████████████████████████

3

████████████████████████████████████[4]

As Samsung admits, SEC is "responsible for developing, designing, testing, manufacturing, and assembling the semiconductor chips and packages accused in Invensas's complaint as well as end consumer devices that use these semiconductor chips."  (Mot. at 5.) Samsung also admits that SEA is the U.S. importer for Samsung products that are sold in the United States, and is "responsible for commercialization, sales, marketing, distribution, service, and repair for those products in the United States."  (*Id.* at 6.)

B.     **The Delaware Action**

On the same day it filed the instant action, Invensas filed an action in the District of Delaware against SEC and Samsung Austin Semiconductor, LLC ("SAS").  (*See* Mot. Ex. 8.)[5] SEA is not a defendant in the Delaware action, nor would venue have been proper over SEA in Delaware.  Samsung admits that "[v]enue would be improper over SAS in this District" but that it is proper over SAS in Delaware.  (Mot. at 5; Mot. Ex. 9 at ¶ 8.)  While the Delaware action also asserts infringement of the '231 and '946 patents against SEC, the similarities end there.

In the Delaware action, Invensas seeks recovery for infringement based on ██████████ ███████████████████████████████████████████████████████████  (*See* Mot. Ex. 8 at ¶¶ 15, 29 (accusing Exynos processors).)  Invensas is not seeking to recover any damages in Delaware that would be duplicative of damages it is seeking in this action.

As Samsung admits, SAS is a Delaware limited liability company, ██████████████

---

[4] To minimize potential dispute and avoid any doubt, Invensas has amended its complaint to make clearer that none of the products it is accusing of infringing the '231 and '946 patent in this case are also accused in the Delaware action.  (Dkt. 52, First Amended Complaint at ¶ 18.)

[5] Invensas filed the two suits separately because, as a New York corporation with offices in Richardson, Texas, but not Delaware, venue would be proper for SEA in this Court but improper in Delaware.  Similarly, despite SAS being based in Austin, Texas, it has no offices in the Eastern District of Texas, but because it is a Delaware limited liability company, venue in Delaware was proper.  (*See* Mot. at 5-6.)

RESTRICTED – ATTORNEYS' EYES ONLY

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████

On January 22, 2018, the Delaware Court held a scheduling conference.  Trial was scheduled for November 18, 2019.  (*See* Ex. 3 at 11.)  Invensas must identify accused products by March 16, 2018; Samsung must produce core technical documentation by May 2, 2018; Invensas must provide initial claim charts by June 1, 2018; and Samsung must provide initial invalidity contentions on June 29, 2018.  (Ex. 3 at 2, 12.)

In an attempt to resolve the venue dispute, Invensas asked Samsung if SAS would consent to venue in this District so that the entire Delaware action could be transferred here. Samsung refused.  (*See* Gotts Decl. at ¶ 9.)  To reduce potential inefficiencies between the cases, the parties agreed to reuse discovery in this action in the Delaware action, and this Court issued its Discovery Order addressing the efficient re-use of such discovery and avoidance of duplication.  (*See* Dkt. 36 at ¶ 5.D; Gotts Decl. at ¶ 10.)

## II.    LEGAL STANDARDS

Whether to sever claims is within the discretion of the Court.  *See Cellular Commc'ns Equip. LLC v. HTC Corp.*, Case Nos. 6:13-cv-507, 6:14-cv-251, 2015 WL 11118110, at \*6 (E.D. Tex. Mar. 27, 2015); Fed. R. Civ. P. 21.  "Courts exercise their discretion to sever only when three factors are met: (1) whether the remaining claims are peripheral to the severed claims; (2) whether adjudication of the severed claims would potentially dispose of the remaining claims; and (3) whether the § 1404(a) factors warrant transfer of the severed claims."  *Cellular*, 2015 WL 1118110, at \*6 (internal quotation omitted).  Here, "severance is a predicate to the requested

RESTRICTED – ATTORNEYS' EYES ONLY

stay of the severed claims." *Id.* at \*9.  If reached, in determining whether to stay a case, courts may consider: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *Microlinc, LLC v. Intel Corp.*, No. 2:07-CV-488 TJW, 2010 WL 3766655, at \*1 (E.D. Tex. Sept. 20, 2010).

The first-to-file rule applies only where "the overlap [between the cases] is complete or nearly complete." *In re Telebrands Corp.*, 824 F.3d 982, 984 (Fed. Cir. 2016) (citing *West Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 730 (5th Cir. 1985)).  "But where there is less overlap, the second district court has considerably more discretion." *Id.*  Exceptions to the rule "are not rare, and are made when justice or expediency requires." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993).  Courts may also consider "the convenience and availability of witnesses" in determining whether the first-to-file rule should not apply.  *Id.*

A first-filed suit against a customer of an allegedly infringing product may yield to a second-filed suit against the manufacturer under the customer-suit exception.  *In re Nintendo of Am.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014).  The basis for this particular exception is "the manufacturer's presumed greater interest in defending its actions against charges of patent infringement" because the manufacturer is the "real party in interest."  *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989).  This same rationale may also support severing claims against a manufacturer and staying the remaining claims against a mere reseller in the same action.  *In re Nintendo*, 756 F.3d at 1365.  However, when "one case would [not] be dispositive of the other," "[t]he public policy favoring expeditious resolution of disputes[, which] is of particular weight when dealing with wasting assets such as patents," strongly counsels that a court allow an action to proceed.  *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir.

RESTRICTED – ATTORNEYS' EYES ONLY

1990).  Where a defendant is not a mere reseller of allegedly infringing goods, the claims against

that defendant are not peripheral and the customer-suit exception does not apply.  *See, e.g.*,

*Cellular*, 2015 WL 11118110, at *7; *Innovative Automation, LLC v. Audio Video & Video Labs,

Inc.*, No. 6:11-CV-234 LED-JDL, 2012 WL 10816848, at *5 (E.D. Tex. May 30, 2012).

## III.   SEVERANCE AND STAY IS NOT WARRANTED AND WOULD CAUSE DELAY, INEFFICIENCY, AND PREJUDICE TO INVENSAS

Samsung does not even attempt to address the factors that this District applies when

deciding a motion to sever and stay claims.  But even if it did, it could not satisfy them.

*First*, Invensas's claims under the '231 and '946 patents in this case are not peripheral to

its claims in the Delaware action.  Samsung admits that SEC, a named defendant in this action, is

"responsible for developing, designing, testing, manufacturing, and assembling the

semiconductor chips and packages accused in Invensas's complaint as well as end consumer

devices that use these semiconductor chips."  (Mot. at 5.)  ███████████████████████

███████████████████████████████, this does not address SEA's importation or U.S. sale

of products incorporating the numerous non-Exynos semiconductor chips that are accused of

infringing these patents *only* in *this* action.  (*See* Ex. 4 at 3-4.)  Moreover, even if Samsung were

to narrow its request to severance of only claims under these patents to Exynos processors

(which it has not), Samsung has not represented that all Exynos processors in the products SEA

sells in the United States ██████████████████.  Finally, Invensas has made clear, and has

further clarified in its amended complaint, that it is not accusing in this action ███████████

███████████████████████████████████████.  Rather, this case is directed to

U.S.-only sales of products containing infringing chips.  (Dkt. 52 at ¶ 18.)  Thus, the first factor

for severance is not satisfied, as the issue of infringement by Samsung's U.S. sales of a broad

array of products and chips is unique to this case, and will not under any circumstance be

RESTRICTED – ATTORNEYS' EYES ONLY

resolved in the Delaware action, ***and*** none of the acts of infringement or products accused in the

Delaware action are at issue here.

*Second*, no matter what Samsung requests to be severed here, the severed claims will not

dispose of any remaining claims.  There are three other patents in this action that will proceed

regardless of whether the Court severs the claims under the '231 and '946 patents.[6]  Further,

because there are numerous semiconductor chips accused of infringing the '231 and '946 patents,

and there is no indication that ████████████████████████████████████, none of these

claims will be disposed of by severing any claims.  Additionally, because Samsung has not

represented that ██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████.  There are

also indirect infringement claims against SEA based on its specific activities that are unrelated to

SAS and the Delaware action.  Thus, the second factor is not satisfied and the interests of judicial

economy are not served in such a situation by severance.  *See, e.g.*, *Ultravision Techs., LLC v.*

*Lamar Advertising Co.*, No. 2:16-CV-374-JRG-RSP, 2017 WL 823419, at *4 (E.D. Tex. Mar. 2,

2017) (not severing claims where other claims, including induced infringement, would not

necessarily be resolved, such that severance would not promote judicial economy).[7]

As severance is not warranted, and the request to sever is a predicate to the request to

stay, Invensas's claims should not be stayed.  And while they need not be considered, under the

traditional stay factors addressed by this District, a stay is inappropriate.  Samsung's Motion, as

---

[6] For the reasons stated in Invensas's concurrently filed response to Defendants' Motion to
Transfer, no transfer of any part of this action is warranted.

[7] Samsung's motion does not request transfer of just the claims under the '231 and '946 patents.
(*See, e.g.*, Mot. at 15.)  In such a case, the third factor related to severing claims need not be
addressed, although transfer would in any case not be warranted for the same reasons given in
Invensas's response to Samsung's motion to transfer.  *See, e.g.*, *Cellular*, 2015 WL 11118110, at
*6.

RESTRICTED – ATTORNEYS' EYES ONLY

well as its transfer motions, are an attempt to stall Invensas's litigation.  Staying claims under the '231 and '946 patents in this action in favor of the Delaware action would delay trial on these patents by nine months, prejudicing Invensas's right to relief.  A stay would also place Invensas at a tactical disadvantage, as Invensas has already provided its infringement theories to Samsung in this action, but the date on which Samsung must provide invalidity contentions is more than two months later in the Delaware action than it is here.  Moreover, as explained above, adjudication of the claims in the Delaware action will not resolve the claims in this action or simplify the issues.  Thus, providing the relief Samsung requests only delays numerous issues in this action that will remain unresolved even after the severed claims are adjudicated and prejudices Invensas.  This Court has found a stay unwarranted under similar circumstances.  *See Ultravision*, 2017 WL 823419, at *5 (Payne, M.J.).

While the review of the factors considered in this District should end the inquiry, Samsung's motion ignores these factors and attempts to rely on the first-to-file rule and the customer-suit exception.  Neither of these doctrines is applicable here, and neither justifies severing or staying Invensas's claims under the '231 and '946 patents.

### A.   First-to-File Does Not Apply Because The Actions Do Not Have Substantially Overlapping Defendants Or Accused Products

The first-to-file rule only applies when there is complete or nearly complete overlap between the two actions.  *Telebrands*, 824 F.3d at 984.  In determining whether such an overlap exists, courts consider the overlap of factual and legal issues and the risk of duplicative litigation.  *See id.* at 985.  Courts also consider the convenience and availability of witnesses when determining whether to apply the first-to-file rule.  *See id.* at 984; *Genentech*, 998 F.2d at 938. All of these factors weigh against applying the first-to-file rule.

### 1.   There Is No Complete Or Nearly Complete Overlap Between The Two Actions

9

This action and the Delaware action are not the same.   First, there are different defendants.   While the ultimate parent corporation SEC is named in both actions, SAS—which Samsung admits cannot be sued in this District—is named only in the Delaware action. Similarly, SEA—which Samsung admits cannot be sued in Delaware—is named only in this action.   Thus, without Samsung's consent, all parties cannot be consolidated into a single action.

Second, there are different patents.   The '946 and '231 patents are at issue in Delaware. The '946 and '231 patents, as well as three other patents, are at issue in this case.   The three other patents include a patented semiconductor process not at issue in Delaware ('336 patent), as well as patented "ball grid array" semiconductor packaging technology that is not at issue in Delaware ('167 and '554 patents).

Third, there are different accused products.   As stated in Samsung's motion, ███████ ████████████████████████████████████████████, while SEA is responsible for importation and sales activities related to consumer products in the United States.   (*See* Mot. at 5-6.)   The products that SEA imports contain many chips accused of infringement in addition to the Exynos.   (*See* Ex. 4 at 3-4.)   ████████████████████████████████████████, Invensas's claims as to those chips will not be duplicated and will not be resolved in Delaware.[8]

Fourth, there are different infringing acts.   SEA's infringing acts in this action include the importation, offering for sale, and sale of consumer products in the United States, as well as induced infringement claims based on its marketing of those products to retailers and consumers in the United States.   By contrast, SAS's infringing acts in the Delaware action are only its

---

[8] As noted above, to minimize potential dispute and avoid any doubt, Invensas has amended its complaint to make clearer that none of the products or acts it is accusing of infringing the '231 and '946 patent in this case are also accused of infringement in the Delaware action.

RESTRICTED – ATTORNEYS' EYES ONLY

█████████████████████████████████████.[9]   Thus, the issues in the two actions are mutually

exclusive and do not overlap as required to apply the first-to-file rule.

The cases cited by Samsung do not change this result because they all had a complete

overlap of parties, claims, or products, and **none** involved both different parties and different

accused products.  *See Novartis AG v. HEC Pharm Co.*, No. 15-1657 (CCC), 2015 WL 5440821,

at *1-2 (D.N.J. Sept. 14, 2015) (applying first-to-file rule where plaintiff filed two identical suits

in different districts)[10]; *Aventis Pharma S.A. v. Sandoz Inc.*, No. 06-3671 (MLC), 2007 WL

1101228, *1-3 (D.N.J. Apr. 10, 2007) (applying first-to-file rule where plaintiff filed two

complaints "raising identical claims of patent infringement"); *Pfizer Inc. v. Apotex, Inc.*, No. 08-

cv-00948-LDD, 2009 WL 2843288, at *2-4 (D. Del. Aug. 13, 2009) (ignoring first-to-file rule

even though plaintiffs "commenced an identical suit" in another district).[11]  As described above,

this action and the Delaware action are far from identical and do not have complete or near-

complete overlap.   The first-to-file rule simply does not apply here.   Applying it would

---

[9] Invensas also accuses SAS of infringement to the extent infringing chips █████████████████████
████████████████████████████████████████████████████████████████████████ *(See,*
*e.g.*, Mot. Ex. 8 at ¶¶ 15, 29).

[10] Samsung peppers the idea of "inconsistent results" throughout its motion, but cites no case that
relies on potential inconsistent results as a reason to provide the relief Samsung requests.  There
is no reason to believe that the Delaware court would reach results inconsistent with this Court,
but more importantly, there is no reason for this Court to delay its earlier-scheduled claim
construction in this case in deference to the Delaware court.  Moreover, where there is not
substantial overlap, and the claims against SEA would necessarily proceed in this District after
conclusion of the Delaware action, this Court may still provide its own claim construction.  *See,*
*e.g.*, *Maurice Mitchell Innovations, L.P. v. Intel Corp.*, No. 2:04-CV-450, 2006 WL 1751779, at
*1, *3-4 (E.D. Tex. June 21, 2006) (re-construing claims addressed by another court and
determining that, while "reasoned deference" to the previous ruling may be appropriate, the
court, "in the end, will render its own independent claim construction").

[11] While *SIPCO, LLC v. Emerson Electric Co.*, appears to not involve identical patents, the
patents were all related and the court found "[t]he same parties are involved in both actions" and
"[t]he accused products are the same as well."  No. 6:15-cv-907, 2016 WL 7743496, at *3 (E.D.
Tex. July 1, 2016).

11

RESTRICTED – ATTORNEYS' EYES ONLY

unjustifiably harm Invensas, as the lagging schedule of the Delaware action would severely delay Invensas's claims in this action, which implicate far more infringing chips and products than the Delaware action.  *See, e.g.*, *Genentech*, 998 F.2d at 937 (holding first-to-file should be ignored "when justice or expediency requires"); *Kahn*, 889 F.2d at 1082 ("[T]he balance is reached in light of the general rule favoring choice of forum, and the harm caused by delay in resolving stayed issues.").

### 2.      It Is More Convenient To Litigate In This District

While Samsung ignores the "convenience" factor entirely, it is far more convenient for the parties to litigate in this District.  SEA, a defendant in this action, has offices in this District in Richardson, Texas.  (*See* Mot. at 6.)  And both Invensas and Samsung have already identified multiple witnesses, including third-party witnesses, located in Texas, where they would be subject to the subpoena power of this Court for attendance at trial, and for which attending trial in Texas would be more convenient and less costly.  (*See* Ex. 6; Ex. 7.)  In contrast, none of the parties have identified a single witness or any relevant documents in Delaware.  Additionally, because the patents-in-suit other than the '231 and '946 patents are not part of Samsung's motion, the parties will still need to travel to this District for the remainder of this action.[12] Invensas only filed the Delaware action because venue was not proper in this District over SAS.

Samsung argues that severing and staying this action would promote judicial economy and reduce the witnesses' burden, but this argument rings hollow.  Samsung has to litigate the remaining three patents in this case in this District, regardless of whether the '231 and '946 claims are severed and stayed.  Thus, if Samsung were genuinely concerned about these issues, it would simply agree to allow Invensas's Delaware claims against SAS to proceed in this action,

---

[12] As Samsung notes, (*see* Mot. at 3), affiliated entities to Invensas also have actions pending in this District, which further indicates it is more convenient to proceed in this District.

12

as proposed by Invensas, reducing the burden on the courts, the parties, and witnesses and eliminating the need to litigate in Delaware entirely.  Further, because this action will proceed ahead of the Delaware action, it is entirely possible that all relevant information regarding ███ ████████████ will be discovered during the course of this action, potentially obviating any further discovery or burden on SAS witnesses in Delaware.  In anticipation of the possibility, the parties have already agreed to allow for the use of discovery in this case for the Delaware action.

### B.     The Customer-Suit Exception Is Inapplicable Because SEA Is Not A Mere Reseller

Samsung's reliance on the customer-suit exception is also misplaced.  (*See* Mot. at 10-11.)  "The customer suit exception is based on the manufacturer's presumed greater interest in defending its actions against charges of patent infringement" as "the real party in interest." *Kahn*, 889 F.2d at 1081.  This rationale is inapplicable here because SEC, SEA, and SAS are all Samsung entities, and all have an interest in defending against claims their products infringe. *See SAES Getters, S.p.A. v. Aeronex, Inc.*, 219 F. Supp. 2d 1081, 1093 (S.D. Cal. 2002) (refusing to apply customer-suit exception to related entities because one entity could not "be labeled a truly secondary party with a lesser interest in defending charges of patent infringement").

Courts faced with similar situations have refused to apply the customer-suit exception. For instance, in *Kahn*, Motorola made integrated circuits incorporated by GM into end products. *See Kahn*, 889 F.2d at 1078.  The Federal Circuit refused to apply the customer-suit exception to stay the case against GM because of the possibility that GM could source the integrated circuits from other sources and the Motorola case would not "resolve all charges against the customers in the stayed suit."  *Id.* at 1081-82.  Here, the possibility *Kahn* was concerned about is real, since some of the products sold by SEA incorporate chips from sources ████████████.

Similarly, in *DSS Technology Management, Inc. v. Intel Corp.*, No. 6:15-cv-130, 2015

RESTRICTED – ATTORNEYS' EYES ONLY

WL 12806514 (E.D. Tex. Nov. 12, 2015), the court refused to apply the customer-suit exception because Intel, the manufacturer of the infringing chips, manufactured some of those chips overseas. *Id.* at *2. Some of those overseas chips would be incorporated into products imported into and sold in the United States by Intel's customers. *Id.* The court refused to sever the claims against Intel because the resolution of those claims would not resolve the claims against the customers and because "severance would increase the complexity of the damages by requiring the Intel Customer Defendants to apportion the accused products that are sourced with domestic-fabricated Intel chips (for this litigation against Intel) and with foreign-fabricated Intel chips (for the subsequent litigation)." *Id.* at *3. The exact same issue exists here—not only would resolution of infringement against SAS not resolve whether ***all*** of the accused products imported or sold by SEA infringe, ███████████████████████████████████ ██████████████████████, but the parties would suddenly need to deal with the additional issue of how to apportion SEA products that ██████████████████████████████████ █████████████████████████████. It is much simpler to deal with all of SEA's products in this case collectively, regardless of where the infringing components are sourced.

Just as in *Khan* and *DSS*, the customer-suit exception should not be applied here. Resolving the dispute between Invensas and SAS will not resolve the dispute as to SEA. *See Mirror Worlds Techs., LLC v. Dell Inc.*, No. 6:13-CV-941, 2014 WL 11268268, at *1-3 (E.D. Tex. Sept. 29, 2014) (refusing to apply customer-suit exception because resolution of the manufacturer claims would not resolve whether all of the customers' acts also infringe).

Samsung's motion also ignores that to the extent there is real party in interest, it is SEC, which is already part of this case. Samsung admits that "SEC and its employees in Korea are ***responsible for developing, designing, testing, manufacturing, and assembling*** the

semiconductor chips and packages accused in Invensas's complaint as well as end consumer devices that use these semiconductor chips." (Mot. at 5.)  In contrast, Samsung claims in its transfer motion that ███████████████████████████████████████████████████████ ███████████████████████████████████████████ (Dkt. 43 at 14-15.)  Thus, there is no reason to defer to the Delaware action, when both the entity most likely to have information related to the accused semiconductor products (SEC) and the entity most likely to have information regarding the accused end consumer products and infringing sales (SEA) are together in this litigation.[13] ███████████████████████ does not warrant severing and stay claims in this case to allow the Delaware action to proceed first.

Finally, while SEA states it will agree to be bound by the outcome of the Delaware action, that agreement is meaningless because even if Invensas wins on all of its claims in Delaware, that would not resolve all of the claims between the parties. *See, e.g.*, *DSS*, 2015 WL 12806514, at *3-4.  This is particularly true because SEA's commitment to be bound to the outcome of the Delaware action does not appear to extend to its importation or sale of products that do not incorporate components ███████████████.

## C.    No Risk Of Double Recovery Due To Different Accused Products

Samsung suggests that there is risk of double recovery between this action and the Delaware action.  (*See* Mot. at 12.)  Samsung is wrong.  As described above, the two actions are mutually exclusive.  There is no risk of double recovery.

## IV.   CONCLUSION

For the reasons set forth above, Samsung's motion should be denied.

---

[13] Samsung's true motive, to litigate in Delaware instead of Texas, is revealed by its actions: if it truly wished to litigate only against the manufacturer, it could have sought to stay the claims only as to SEA and proceed against SEC, but it did not.

RESTRICTED – ATTORNEYS' EYES ONLY

Dated: February 16, 2018

Respectfully submitted,

*/s/ Lawrence J. Gotts w/permission Claire Henry*
Lawrence J. Gotts
DC Bar No. 417219
Matthew J. Moore
DC Bar No. 453773
Alan M. Billharz
DC Bar No. 1034089
LATHAM & WATKINS LLP
555 Eleventh Street, NW Suite 1000
Washington, DC 20004-1304
Tel.: (202) 637-2200
Fax: (202) 637-2201
Lawrence.Gotts@lw.com
Matthew.Moore@lw.com
Alan.Billharz@lw.com

Clement J. Naples
New York Bar No. 4217717
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
Tel.: (212) 906-1200
Fax: (212) 751-4864
Clement.Naples@lw.com

Joseph H. Lee
California Bar No. 248046
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA  92626-1925
Tel: 714-540-1235
Fax: 714-755-8290
Joseph.Lee@lw.com

Amit Makker
California Bar No. 280747
Brian W. Lewis
California Bar No. 290727
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000

16

RESTRICTED – ATTORNEYS' EYES ONLY

San Francisco, CA 94111
Tel: 415-391-0600
Fax: 415-395-8095
Amit.Makker@lw.com
Brian.W.Lewis@lw.com

T. John Ward
Texas State Bar No. 20848000
Claire Abernathy Henry
Texas State Bar No. 24053063
Andrea Fair
Texas State Bar No. 24078488
WARD, SMITH & HILL, PLLC
PO Box 1231
Longview, Texas 75606-1231
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)
tjw@wsfirm.com
claire@wsfirm.com
andrea@wsfirm.com

***Attorneys for Plaintiff Invensas Corporation***

RESTRICTED – ATTORNEYS' EYES ONLY

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Therefore, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email on this the 16th day of February, 2018.

*/s/ Claire Henry*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

This is to certify that the above document should be filed under seal because it contains material designated by the parties as confidential pursuant to the Stipulated Protective Order entered in this case (Dkt. 46).

*/s/ Lawrence J. Gotts*
Lawrence J. Gotts