# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| INVENSAS CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>    Defendants. | Civil Action No. 2:17-cv-670-RWS-RSP<br><br>**FILED UNDER SEAL**<br><br>**JURY TRIAL DEMANDED** |

## INVENSAS CORPORATION'S MOTION
## TO COMPEL DISCOVERY FROM DEFENDANTS

It is well-established in this District that a defendant must produce discovery on products that are "reasonably similar" to those identified in a plaintiff's infringement contentions. Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively "Samsung"), however, have not produced any information on "reasonably similar" products. Samsung has stonewalled plaintiff Invensas Corporation ("Invensas") for months, and in the meantime, has done nothing to even attempt to identify reasonably similar products.

Invensas clearly delineated the scope of products it considers to be "reasonably similar," but Samsung complained that determining what products are "reasonably similar" would be too burdensome (without quantifying such burden). Invensas responded with specific proposals for reducing any such burden, but Samsung rejected all of them. The only "compromises" Samsung offered would drastically limit the scope of discovery and accused products (and hence the scope of Invensas' case and ultimate damages claim) to a small subset of likely infringing products. This Hobson's choice, however, is exactly what the Local Rules are designed to avoid. Invensas is entitled through discovery to learn the full extent of Samsung's infringement. Although Samsung objects to the potential volume of required documents, this stems from Samsung's broad use of the patented technologies. Broad infringement is *why* a patent owner is entitled to discovery on reasonably similar products; it is not an excuse for *not* providing discovery.

## I.     FACTUAL BACKGROUND

On September 28, 2017, Invensas filed this action alleging that Samsung infringed five patents related to semiconductor chips.[1] Three of the patents (the '231, '946, and '336) are directed to manufacturing the chip, and two (the '167 and '554) are directed to packaging it.

---

[1] The patents are U.S. Patent Nos. 6,232,231 (the "'231 patent"), 6,849,946 (the "'946 patent"), 6,054,336 (the "'336 patent"), 6,566,167 (the "'167 patent"), and 6,825,554 (the "'554 patent").

On January 29, 2018, Invensas served detailed infringement contentions accusing chips from an array of categories, including annotated images of "torn down" chips that specifically identified the layers of materials and structures in the accused chips and how they infringe. For example, for the '946/'231 patents, Invensas included pictures like the one to the right that clearly identify the claimed dummy trenches between a first trench and series of second trenches.  Teardowns were required because the information relevant to the patented technologies cannot be discerned by simple examination of the chip or knowledge of its function.

Each of these "teardowns" is very costly, ranging from roughly ▇▇▇▇▇, depending on the patent, and can take weeks to perform. In preparing its infringement contentions, Invensas spent ▇▇▇▇▇. Invensas is now using the technical discovery produced by Samsung to prove its infringement of these chips. Invensas believes that numerous additional Samsung chips infringe the '946/'231 patents[2] and the other patents-in-suit, but it would either need to tear down every individual chip or review Samsung technical information to determine whether the chip indeed infringes.

It would be a near impossible task for Invensas to blindly purchase current and discontinued products in the marketplace (even if all of them could be located and identified, which they could not), determine if potentially infringing Samsung chips are in such products, and tear

---

[2] This belief is well supported. Just recently the U.S. ITC found the '946 patent valid and infringed by **over 2100** Broadcom semiconductor devices across seven process nodes, evidencing the pervasive use of the patented technology in the industry. *See Certain Semiconductor Devices, Semiconductor Device Packages, and Prods. Containing Same*, Inv. No. 337-TA-1010, Dkt. 3150 at 22-39 (July 28, 2017) (public initial determination).

2

down such chips.  And even if Samsung provided all such products and chips to Invensas, the cost of this effort would likely be on the order of ███████████████, assuming for example 100 chips were identified for teardown.  Such an effort would take months, and would jeopardize the schedule in this case in view of the enormity of the effort required.

Samsung, on the other hand, has readily available all of the technical information Invensas needs to identify and analyze the additional potentially infringing chips.  This includes Samsung's "GDS" files (which essentially describe the layout of a chip), manufacturing recipe files, mcm layout files, and other technical information.  This is the exact type of discovery a patent owner is entitled to in order to analyze, confirm, and prove infringement.

Anticipating discovery of reasonably similar products may become an issue, on February 26, 2018, over two months before Samsung's technical document production was due, Invensas reminded Samsung that discovery is not limited to only the products charted in the contentions, but also extends to products that are "reasonably similar" to those charted.  Invensas cited multiple cases from this District supporting its position and asked that Samsung tell Invensas if it disagreed or did not intend to provide discovery on reasonably similar products so the parties could address the issue, and if needed, timely raise it with the Court.[3]  Samsung never responded, nor disputed its obligations regarding reasonably similar chips.

On April 9, 2018, Samsung gave its first indication that it intended to withhold discovery on reasonably similar chips.  Samsung responded to an interrogatory seeking identification of all "Accused Components"—which was defined to include reasonably similar products with specific features and characteristics—with only the list of products Invensas expressly identified in its contentions, without identifying any reasonably similar products.  (*See* Exs. 1, 2.)  During the

---

[3] Invensas also stated it would seek to amend its contentions after obtaining the relevant discovery.

parties' meet and confers, Samsung initially complained that Invensas was merely parroting claim language to define "reasonably similar," claiming this created a definition Samsung could not apply.  Ultimately, Samsung admitted that it understood what products would be "reasonably similar," but complained identifying all reasonably similar products would be too burdensome for Samsung because it does not categorize its chips based on such structures.

As a further accommodation, Invensas proposed a "representative products" stipulation covering different categories of chips (such as Proposed Order B), for example all Exynos application processors, to reduce the amount of technical documentation Samsung would be required to produce.  Samsung rejected this proposal.  Invensas also suggested that Samsung could produce technical documents for all chips within each of the enumerated categories.  This approach would obviate Samsung's stated burden of undertaking a chip-by-chip review to identify reasonably similar products.  Invensas would then review the documentation to identify infringing chips.  Again, Samsung refused.  Samsung's document production followed, which similarly failed to include information on reasonably similar products.

Rather than make *any* effort to identify *a single* reasonably similar chip for any patent, Samsung proposed drastically limiting the scope of the case (and Samsung's likely very large exposure) to capture, *e.g.*, only smartphones, the chips specifically identified in Invensas' infringement contentions, or newer versions of those chips.  While newer chip versions would include some reasonably similar chips, it leaves out, *e.g.*, older chips and chips found in other non-smartphone products or that perform other functions, but which use the same accused technology.

## II.   THE COURT SHOULD COMPEL DISCOVERY

"It is well settled in the Eastern District that 'there is no brightline rule that discovery is permanently limited to the products specifically accused in a party's [infringement contentions].'" *DDR Holdings, LLC v. Hotels.com, L.P.*, No. 2:06-cv-42-JRG, 2012 WL 2935172, at *2 (E.D.

4

Tex. July 18, 2012) (quoting *Honeywell Int'l, Inc. v. Acer Am. Corp.*, 655 F. Supp. 2d 650, 655 (E.D. Tex. 2009)) (alteration in original). "Such a limitation would be inconsistent with the broad discovery regime created by the Federal Rules and the notion that a party may be able to amend its [infringement contentions.]" *Id.* (quotation omitted) (alteration in original). "Therefore, discovery may be properly extended to products 'reasonably similar' to those accused in [infringement contentions]." *Id.* (quotation omitted) (alteration in original). A plaintiff need only "demonstrate that its [infringement contentions] gave [the defendant] notice of a specific theory of infringement and that the products for which it seeks discovery operate in a manner reasonably similar to that theory." *Honeywell*, 655 F. Supp. 2d at 656.

There can be no dispute that Invensas is entitled to discovery on reasonably similar chips. Samsung's only complaint is that it is too burdensome to identify them. But any burden is a result of the breadth of Samsung's infringement and is not a valid excuse. *See, e.g.*, *Advanced Micro Devices, Inc. v. Samsung Elecs. Co.*, No. C 08-986 SI, 2009 WL 1834147, at *3 (N.D. Cal. June 24, 2009) (ordering discovery on reasonably similar products over Samsung's objection that discovery of processors was burdensome because it included "many different types of products").

Indeed, this Court has compelled discovery in situations directly analogous to this one. In *Honeywell*, the plaintiff tore down a handful of chips, at considerable expense, and found that they were likely infringing. *See* 655 F. Supp. 2d at 652-53. When the plaintiff sought identification of and discovery on reasonably similar products, the defendant refused to provide discovery. *Id.* The Court ordered the discovery, finding that the contentions provided "a specific infringement theory" and that the plaintiff had shown that "the products it [sought] discovery of likely operate in a manner reasonably similar to the infringement theory . . . ." *Id.* at 656-58. Further, like the defendant in *Honeywell*, Samsung is "aware of what is accused and has ready access to the

5

technical information sought" by Invensas, and Samsung "can acquire it much more easily than [Invensas] can by purchasing and breaking down [Samsung's] products." *Id.* at 653, 656; *see also Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, Case No. 2:16-cv-134-JRG-RSP, Dkt. Nos. 142, 145 (E.D. Tex. Dec. 19, 2016) (compelling discovery of all products in various "process (technology) node[s]" as "reasonably similar" to six representative products charted and finding charts for six products sufficient because they resulted from teardown reports costing $20,000 each).

And while tearing down dozens of chips could cost Invensas ███████, identifying reasonably similar chips should not be unduly onerous for Samsung. As explained in the attached declaration of Invensas' expert Mr. Chapman, an expert in analyzing GDS files, a Samsung engineer could readily determine if a particular chip is reasonably similar to the chips already accused of infringing the '946/'231 patents by either having personal knowledge that the relevant portions of the chip have not changed over time or by simply opening a GDS file, zooming in to an area with interblock routing, and checking if the dummy pattern exists. (*See* Chapman Decl. at ¶¶ 3-4.) Mr. Chapman has performed this check in this case and in other cases, and it is neither time consuming nor difficult for an engineer to do. (*See id.*)

For the '336 patent, Samsung need only provide information on all chips at particular process nodes (akin to manufacturing lines), including at least the 20nm process node and below for DRAM and FinFET products. *See Godo Kaisha*, Dkt. Nos. 142, 145. And for the '167 and '554 patents, Samsung need only provide information on chips with 2-layer packaging substrates. Samsung's documentation identifies such chips, meaning a keyword search would pull the relevant documentation. Samsung can also ask its engineers which chips from the relevant time periods contain similar structures to those accused of infringement by Invensas.

Samsung has argued that this shifts the burden of determining infringement to Samsung,

6

relying on *TiVo Inc. v. Samsung Elecs. Co.*, No. 2:15-cv-1503-JRG, Dkt. No. 129 (E.D. Tex. July 22, 2016). But *TiVo* dealt with whether products added to contentions without leave are properly accused, and not whether discovery on such products is warranted. Samsung's identification of reasonably similar chips does not require it to determine (or admit) infringement. Invensas would still review the discovery and ultimately determine whether the chips actually infringe.

Alternatively, Samsung proposed "sharing" the burden by providing Invensas with potentially hundreds of chips to tear down on its own. Samsung came up with this idea from a prior Invensas case, *Invensas Corp. v. Renesas Electronics Corp.*, 287 F.R.D. 273 (D. Del. 2012), which involved the '167 and '554 patents. But this approach makes no sense here, since Samsung would still have to determine which chips are "reasonably similar"—which has been Samsung's complaint all along—in order to produce them. And once reasonably similar chips are identified and produced, the relative burden of producing the associated technical documents would pale in comparison to the expense and burden to Invensas associated with tearing down hundreds of chips. Invensas has already spent ████████████████████████████████████████. Moreover, unlike in *Renesas*, Samsung has admitted it understands what chips would be reasonably similar. This understanding is helped here by Invensas' detailed contentions.

### III. CONCLUSION

Samsung knows how to determine what should be produced, and it would be straightforward for it to do so from files that are readily ascertainable. Samsung should produce GDS files, manufacturing recipe files, mcm layout files, and other technical information for all chips that are reasonably similar to the accused chips as set forth in Proposed Order A. Alternatively, Samsung should produce all such files for the categories of chips set forth in Proposed Order B, to enable Invensas to undertake a review to determine those which are reasonably similar and potentially infringing.

7

Dated: May 14, 2018                                          Respectfully submitted,

                                              */s/ Clement J. Naples by permission Andrea Fair*
Clement J. Naples
New York Bar No. 4217717
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
Tel.: (212) 906-1200
Fax: (212) 751-4864
Clement.Naples@lw.com

Matthew J. Moore
DC Bar No. 453773
Lawrence J. Gotts
DC Bar No. 417219
Alan M. Billharz
DC Bar No. 1034089
LATHAM & WATKINS LLP
555 Eleventh Street, NW Suite 1000
Washington, DC 20004-1304
Tel.: (202) 637-2200
Fax: (202) 637-2201
Matthew.Moore@lw.com
Lawrence.Gotts@lw.com
Alan.Billharz@lw.com

Joseph H. Lee
California Bar No. 248046
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA  92626-1925
Tel: 714-540-1235
Fax: 714-755-8290
Joseph.Lee@lw.com

Amit Makker
California Bar No. 280747
Brian W. Lewis
California Bar No. 290727
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: 415-391-0600
Fax: 415-395-8095
Amit.Makker@lw.com

>Brian.W.Lewis@lw.com
>
>T. John Ward
>Texas State Bar No. 20848000
>Claire Abernathy Henry
>Texas State Bar No. 24053063
>Andrea Fair
>Texas State Bar No. 24078488
>WARD, SMITH & HILL, PLLC
>PO Box 1231
>Longview, Texas 75606-1231
>(903) 757-6400 (telephone)
>(903) 757-2323 (facsimile)
>tjw@wsfirm.com
>claire@wsfirm.com
>andrea@wsfirm.com
>
>*Attorneys for Plaintiff Invensas Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served on all counsel of record by email on this 14th day of May, 2018.

>*/s/ Andrea Fair*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that the conference required by Local Rule CV-7(h) occurred via teleconference on April 20, 2018 between Clement Naples, Amit Makker, and Andrea Fair, counsel for Plaintiffs, and Brian Berliner, Mark Liang, and Melissa Smith, counsel for Defendants. The parties had a subsequent meet and confer via teleconference on May 1, 2018 and exchanged a number of emails on this issue before and after these teleconferences. The parties disagree about the substance of the motion, thus discussions conclusively ended in an impasse, leaving an open issue for the Court to resolve.

*/s/ Clement J. Naples*
Clement J. Naples

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

This is to certify that the above document should be filed under seal because it contains material designated by the parties as confidential pursuant to the Stipulated Protective Order entered in this case (Dkt. 46).

*/s/ Andrea Fair*