RESTRICTED - ATTORNEYS' EYES ONLY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

|  |  |
|---|---|
| INVENSAS CORPORATION,<br><br>          Plaintiff,<br><br>    vs.<br><br>SAMSUNG ELECTRONICS CO., LTD.<br>and SAMSUNG ELECTRONICS<br>AMERICA, INC.,<br><br>          Defendants. | Civil Action No. 2:17-cv-670 [RWS/RSP]<br><br>FILED UNDER SEAL<br><br>CONTAINS INFORMATION<br>DESIGNATED "RESTRICTED -<br>ATTORNEYS' EYES ONLY"<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY
FROM DEFENDANTS**

**RESTRICTED - ATTORNEYS' EYES ONLY**

Invensas's motion ("Mot.") rests on wildly false assumptions about the burden on Samsung of identifying "reasonably similar" chips and a distorted description of Samsung's proposals for accommodating Invensas's demands.  Invensas has never offered any criteria for identifying "reasonably similar" chips other than simply parroting claim limitations of the five Patents-in-Suit. Samsung in response has explained to Invensas that reliance on claim limitations to identify similar chips would force Samsung to spend thousands of hours to perform what is effectively an infringement analysis on Invensas's behalf.  Samsung accordingly offered five less burdensome proposals to meet Invensas's demands, including one adopted in *Invensas Corp. v. Renesas Electronics Corp.*, 287 F.R.D. 273 (D. Del. 2012) — a case involving Invensas and two of the Patents-in-Suit where the *same* discovery dispute arose.  Invensas, however, has rejected all proposals and insisted on shifting the burden of proving infringement onto Samsung.

I.   **Invensas's Reliance On Claim Limitations To Identify "Reasonably Similar" Chips Improperly Shifts The Burden Of Proving Infringement Onto Samsung**

On March 8, Invensas propounded its Interrogatory No. 2 that requested identification and information about "Accused Components," which include "'231/'946 Accused Components, '336 Accused Components, and '167/'554 Accused Components."  D.I. 85-2 at 4, 11.  Rather than listing these "accused components" or any useful criteria for identifying them, Invensas defined these terms as including any chips "reasonably similar" to those accused in its infringement contentions, where "reasonably similar" means any chips that potentially infringe its patents.  For example, Invensas defined "'231/'946 Accused Components" as chips "made using the process described in the '231 and '946 patents, and/or include dummy conductors in the same or a ***reasonably similar way as described in the '231 and '946 patents.***"  *Id*. at 4-5 (emphasis added). Notably, "dummy conductors" is a term in the '231 and '946 Patents' claims, and its construction is currently disputed by the parties.  Thus, without a *Markman* order construing "dummy conductors," Samsung cannot rely on that term to accurately identify "reasonably similar" chips.

Similarly, Invensas defined "'167/'554 Accused Components" as chips that "include an isolation trace on a substrate having two metal layers in a ball grid array or similar package in the same or a ***reasonably similar way as described in the '167 and '554 patents***." But "isolation trace on a substrate having two metal layers in a ball grid array" is a paraphrasing of claim limitations in those two patents, and "trace" is another term with a construction that is currently disputed between the parties.  *Id*. at 8 (emphasis added).  And Invensas defined "'336 Accused Components" as "chips made using the process described in the '336 patent."  *Id*.

In its April 9 responses, Samsung objected to these definitions as "vague, ambiguous, overly broad, and unduly burdensome and improperly placing the burden of identifying accused products on Samsung."  Ex. 2 at 6-8.  Samsung incorporated these general objections in its specific response to Interrogatory No. 2, and it provided information for the chips that Invensas had specifically accused in its contentions.  *Id*. at 11-13; *see also* Ex. 2 at 11-13, Ex. A.  Invensas did not object to the sufficiency of the information Samsung provided in its response to Interrogatory No. 2 beyond the fact that the response was limited to only the accused chips.

In several subsequent meet and confers over Samsung's objections to the interrogatory, Invensas repeatedly demanded that Samsung identify and provide discovery for all chips that are "reasonably similar."  But Invensas refused to modify its criteria for what constitutes a "reasonably similar" chip.  Rather, Invensas insisted on following its interrogatories' definition of "reasonably similar" chips as any chips that might practice claim limitations of the Patents-in-Suit.

By defining "reasonably similar" chips based on their practice of claim limitations, Invensas has effectively asked Samsung to perform an infringement analysis that would take thousands of hours.  As a conservative estimate, the Samsung end consumer products that Invensas accuses include well over ███████████     ███████     Contrary to Invensas's contention that Samsung could conduct a "keyword search would pull the relevant documentation"

**RESTRICTED - ATTORNEYS' EYES ONLY**

(Mot. at 6), ███████████████████████████████████████

███████████████████  Nor can Samsung identify "reasonably similar" chips by simply asking

a few engineers to provide a list.  No one or small group of engineers can provide this information

because ██████████████████████████████████████████

███████████████████████████

　　　　To identify "reasonably similar" chips using Invensas's criteria, Samsung would have to

conduct a complex, lengthy analysis.  ██████████████████████████████

████████████████████████████████████████████████████

███████████  To then isolate from these chips those that are "reasonably similar" based on claim

limitations, Samsung would have to do the same thing as Invensas to evaluate infringement —

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████

　　　　Courts have routinely sustained objections to discovery requests that similarly required the

responding party to expend hundreds of hours analyzing its own records.  *E.g.*, *Connect Insured*

*Tel., Inc. v. Qwest Long Distance, Inc.*, No. 3–10–CV–1897–D, 2011 WL 4736292, at *3-4 (N.D.

Tex. Oct. 6, 2011) (denying plaintiff's motion to compel that would have required defendant phone

company to spend "hundreds if not thousands of hours" to collect and analyze its "call detail

records").   And because Samsung has already produced to Invensas ███████ for all consumer

products, there is no reason why Invensas cannot itself undertake at least part of this investigation.

3

RESTRICTED - ATTORNEYS' EYES ONLY

Moreover, by insisting that Samsung determine which of its ███████ are "reasonably similar" based on whether those chips read on the claims, Invensas improperly seeks to shift the burden of proving infringement onto Samsung.  As this District has held, "the burden is on Plaintiff, not Defendants, to search for and identify infringing products."  *See Keranos, LLC v. Silicon Storage Tech., Inc.*, No. 2:13–cv–17, 2013 WL 5763738, at *3 (E.D. Tex. Aug. 5, 2013), *vacated in part on other grounds*, 797 F.3d 1025 (Fed. Cir. 2015).

That Invensas demands that Samsung do its work for it distinguishes this case from those cited in the motion in which the plaintiff provided discrete, specific criteria for identifying similar products.  In *Honeywell International, Inc. v. Acer America Corp.*, the plaintiff actually identified by model number, two additional "Driver IC" products ("S6C 1104"and "HD66323") and presented documents showing that those two models operated similarly to other Driver ICs already accused in its contentions.  655 F. Supp. 2d 650, 656 (E.D. Tex. 2009).  In *Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, the plaintiff sought discovery of "28nm and 90nm process node products" when its contentions identified similar products manufactured at other process nodes.  Case No. 2:16-cv-134-JRG-RSP, Dkt. No. 145 (E.D. Tex. Dec. 19, 2016).  And in *DDR Holdings, LLC v. Hotels.com, L.P.*, plaintiff sought a deposition relating to "five specific DR Platforms" that were not included in its contentions.  No. 2:06-CV-42-JRG, 2012 WL 2935172, at *2 (E.D. Tex. July 18, 2012).  In *none* of these cases did the plaintiff pose an open-ended request that defendant identify which of its hundreds of products could potentially infringe.  And in all these cases, the plaintiff was diligent in investigating and developing reasonable criteria for determining whether specific additional products operated similarly to products already accused.  Here, Invensas has performed no investigation of any additional chips — it instead asks Samsung to do so.

This is not the first time that Invensas has tried to shift the burden onto a defendant to conduct its infringement analysis by demanding identification of "reasonably similar" products.

Invensas tried this same ploy in *Invensas* discussed above, where the asserted '167 and '554 Patents in this case were also at issue.  There, after serving infringement contentions, Invensas moved to compel discovery of products falling under the definition of "Your Products" (i.e., accused products), where this definition simply "reprint[ed] portions of claim language."  287 F.R.D. at 284.  The court rejected Invensas's demand because it would require defendant "to do an infringement analysis" of its "1,626 different BGA products," and "provide full discovery on those products which [defendant] determines fall within" the scope of the claims.  *Id*. at 286.  Likewise, granting Invensas's motion "would shift the burden from Plaintiff to Defendant to be the party responsible for articulating why certain of those products do in fact infringe."  *Id*.  The court also noted that to perform this infringement analysis, the defendant would have to "conduct 'a difficult search of multiple databases' and conduct numerous 'engineer interviews'" and, "to identify whether the product may contain a substrate of the type referenced in Plaintiff's definitions, [defendant] would be required to 'tear down a product itself or conduct a laborious search for particularized documents.'"  *Id*.  The court resolved Invensas's motion by adopting the defendant's proposal of supplying samples of the accused products to Invensas.  *Id*. at 287.

 *Invensas* is indistinguishable from the facts here.  Like the defendant in *Invensas*, to identify "reasonably similar" chips under Invensas's definition, Samsung would have to review

███████████████████████████████████████████████████████████

████████████████████████████████████████████  Invensas's argument that *Invensas* is distinguishable because "Samsung would still have to determine which chips are 'reasonably similar'" (Mot. at 7), does not actually distinguish *Invensas* in any way.  In *Invensas*, the scope of the "reasonably similar" chips was also unknown under Invensas's definition and could only be determined after defendant conducted an infringement analysis of "1,626 different BGA products" to determine which could read on the claims.  Although Invensas complains about

RESTRICTED - ATTORNEYS' EYES ONLY

the burden of undertaking an infringement analysis on its own, this burden *should* be borne by Invensas because it is the plaintiff.  This is particularly so here because the infringement analysis is no less costly or burdensome if undertaken by Samsung.

## II.    Samsung's Five Proposals For Accommodating Invensas's Demands

Given the burden imposed by Invensas's demands, during the meet and confer process, Samsung offered five proposals, three before Invensas filed its motion and two afterward, to accommodate Invensas's demands in a less burdensome manner as discussed below.

Samsung initially proposed: (1) producing samples of the accused end consumer products to Invensas, which was the proposal adopted in *Invensas* as discussed above; (2) a stipulation whereby some of the chips that Invensas has expressly accused would be considered representative of other non-accused chips used in the same consumer products; (3) limiting Samsung's supplementation of the interrogatory response to identifying newer versions of chips that Invensas has accused.  *See* Ex. 1 at 1 (Samsung's meet and confer email detailing each proposal).

Before filing its motion, Invensas rejected the first and third proposals.  For the second proposal of a stipulation, Invensas counter-proposed that Samsung "identify all chips covered by a representative chip."  Samsung explained that this would defeat the purpose of the stipulation because it would again require Samsung to assess which chips were "reasonably similar" without any guidance from Invensas other than claim limitations.  *Id*. at 2.  Samsung also explained that there was no practical benefit in identifying additional chips because that would have no effect on Invensas's damages base, which are consumer products as Invensas emphasized in opposing Samsung's pending motion to sever and stay.  D.I. 53, 1-3.  Because Invensas's contentions already accuse all end user products in certain categories (e.g., smartphones) of infringing, identifying additional chips that may be included in those end products would have no bearing on the number of end products included in the damages base.

RESTRICTED - ATTORNEYS' EYES ONLY

After Invensas filed its motion, Samsung offered two additional proposals, outlined below.

First, Samsung offered to identify all "reasonably similar" chips, but only within the chip categories that Invensas had accused in its contentions for three of the Patents-in-Suit ('167, '554, and '336 Patents).   In particular, Samsung would identify chips within the categories of:   (1) DRAM chips; (2) chips made using the 10nm finFET process; (3) Flash chips; and (4) image processors chips.  This identification would be limited to chips included in end consumer products sold in the United States since ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

Second, Samsung offered a stipulation for the two other Patents-in-Suit ('231 and '946 Patents) under which, similar to the second proposal, some of the chips that Invensas has expressly accused in its contentions would be considered representative of other non-accused chips within certain categories.   In addition, Samsung offered to identify all non-accused chips that were included in consumer products sold in the United States since █████████████   The proposal would ease the burden on both parties significantly — Samsung would not have to collect ████ █████████████████████████████   that are "reasonably similar" and Invensas could limit its analysis to only the representative chips.

As of the date of this response brief (May 29), Invensas has rejected Samsung's two recent proposals and counter-proposed expanding the categories of implicated chips beyond those accused in its contentions and again requiring Samsung to rely on claim limitations to identify additional non-accused chips.  The parties are continuing to negotiate compromise proposals in an effort to resolve the dispute.  To the extent that the parties' dispute remains unresolved by the June 13 hearing date, Samsung requests that the Court adopt Samsung's most recent two proposals.

**RESTRICTED - ATTORNEYS' EYES ONLY**

Dated: May 29, 2018                         Respectfully submitted,

By: */s/ Ryan K. Yagura*

Ryan K. Yagura (Tex. Bar No. 24075933)
ryagura@omm.com
Brian M. Berliner (Cal. Bar No. 156732)
bberliner@omm.com
**O'MELVENY & MYERS LLP**
400 S. Hope Street
Los Angeles, CA 90071
Telephone: 213-430-6000
Facsimile: 213-430-6407

Darin W. Snyder (Cal. Bar No. 136003)
dsnyder@omm.com
Mark Liang (Cal. Bar No. 278487)
mliang@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: 415-984-8700
Facsimile: 415-984-8701

D. Sean Trainor (D.C. Bar No. 463514)
dstrainor@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street NW
Washington, DC 20037
Telephone: 202-383-5300
Facsimile: 202-383-5414

Melissa R. Smith
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, TX 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257

**RESTRICTED - ATTORNEYS' EYES ONLY**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served on all counsel of record by email on this 29th day of May, 2018.

*/s/ Ryan K. Yagura*       

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

This is to certify that the above document should be filed under seal because it contains material designated by the parties as confidential pursuant to the Stipulated Protective Order entered in this case (Dkt. 46).

*/s/ Ryan K. Yagura*